# W. H. MOORE v. MRS. WILFORD STANFILL et al. —313 S. W. (2d) 486.

Western Section. February 22, 1957.

Certiorari denied by Supreme Court July 29, 1957.

George L. Morrison, Hancock & Manhein, John Van Den Bosch, Jr., Jackson, for appellant.

Martin Exum, Jackson, for appellees.

AVERY, P. J. (W. S.) This is a suit by W. H. Moore, a resident of the State of North Carolina, against his daughter, Mrs. Mary Elizabeth Moore Teasley, a resident of Columbus, Georgia, and against the known and unknown heirs of W. J. Moore, deceased, in the Chancery Court of Madison County, Tennessee, by which he seeks a declaratory decree construing the quality of his title to a 123 acre tract of land conveyed to him by deed of his grandfather, the said Wm. J. Moore, dated the 9th day of November, 1889. Certain of the defendants are residents of Madison County, Tennessee.

The particular question to be determined is whether or not the complainant, W. H. Moore who is the same person as William Harbert Moore, took an absolute fee simple title to said property or only a life estate. The quality of title complainant has depends upon a proper construction of said referred to deed, and because of the fact that it seems no deed, containing similar pro-

visions as does the deed in question, has ever been determined by any reported opinion of the appellate courts of the State of Tennessee, nor elsewhere, so far as the writer of this Opinion has been able to find, and with the peculiar phraseology and formation of this deed, it is proper to copy it herein in its entirety:

"W. J. Moore
To      Deed
Willie H. Moore

Filed Dec. 23, 1893.

"For and consideration of the love and affection I have and entertain for my Grand-son Willie Harbert Moore, I William J. Moore, of the County of Madison and State of Tennessee, have this day conveyed and by these presents give to my said Grandson Willie Harbert Moore of the said County and State aforesaid, all the right, title and interest I have in and to the following described tract of land lying and being in Madison County, Tenn. in the 15th Civil District known as the Jackson land and bounded as follows:

"Beginning at a point in the lane Williams Newsoms South West corner, runs with the said lane North ¼° West 38 29/100 chains, Thence West 31 99/100 chains to a stake with Redbud Red elm and two Red oak pointers, Thence South 38 29/100 chains to a point in the lane, Thence East 32 15/100 chains to the Beginning containing 123 acres.

"To have and to hold the same to the said Willie Harbert Moore his heirs and assigns forever, subject to certain conditions and contingencies to be

hereafter set out in this deed. I covenant with the said Willie Harbert Moore that I am lawfully seized of said land, have a good right to convey it, and that the same is unencumbered. I further covenant and bind myself my heirs and representatives to forever warrant and defend the title to said land to the said Willie Harbert Moore his heirs and representatives.

"But this deed is made subject to the following conditions and contingencies that is to say it is my intention and desire that in the event my said Grandson shall marry and issue shall be born unto him, that I want him to have the land herein conveyed absolutely and in fee simple the same to go to his heirs at his death. But if he should never marry, and if married no issue is born to him, then and in that event I want the land herein conveyed at the death of my Grandson, the said Willie Harbert Moore to revert back to me, or if I am dead to my estate to be divided equally among all my heirs clear of any encumbrances as to dower and homestead or otherwise, that is to say I want my heirs and representatives to have the land at his death in the event he should die without issue alive—and in the event of the marriage of the said Willie Harbert Moore and upon his death without issue alive. I do not by this deed convey to his widow, if he should leave one without issue as aforesaid, any rights of dower and homestead or otherwise in said land, but the same is hereby specially reserved and the land herein conveyed is to descend to my heirs as directed in this deed of conveyance. The issue contemplated

in this deed in order to give the said Willie Harbert Moore an absolute fee simple title to the land herein conveyed, *must* be issue alive at the time of his death.

"In testimony whereof, I have hereunto set my hand this 9th day of Nov. 1889.

his<br>
/s/ W. J. X Moore<br>
mark

"The State of Tennessee }
Madison County          .  }

"Personally appeared before me, F. W. Adamson, Clerk of the County Court of said County, W. J. Moore, the bargainor to the attached instrument, with whom I am personally acquainted, and who acknowledged that he executed said instrument for the purposes therein contained.

"Witness my hand, at office, this 21st day of December, 1893.

s/s F. W. Adamson, Clerk.

"State of Tennessee }
Madison County      }

"I, J. W. Wallace, Register of said County, do hereby certify that the foregoing and attached instrument with County Court Clerk's certificate thereon, was filed in my office for registration this day at 9 o'clock A.M. and so noted in Note Book No. 7, on page 395. Witness my hand, at office, this 23rd day of December, 1893.

.    s/s J. W. Wallace, Register.

"State of Tennessee |
Madison County        |

"I, J. R. Anderson, Register of said County, do hereby certify that the foregoing is a full, true and correct copy of the records as appears in my office in Book of Deeds No. 51 page 475.

"Witness my hand, at office, this 27th day of July, 1903.

s/s J. R. Anderson, Register."

The acknowledgement is proper. but was executed four years after the date of the deed, which deed was filed for record in the Register's Office of Madison County, two days after it was acknowledged.

The parties are all properly before the Court, either by personal service or subpoena to answer, or by publication as required by law for non-residents. Certain of the defendants answered the bill by which answers they insist that the complainant took only a life estate in the property conveyed by said deed. The daughter of the complainant accepted service of process issued for her, which was a subpoena to answer addressed to the Sheriff of Madison County, but she did not answer the original bill and a pro-confesso was taken against her along with all others who did not answer.

The original bill avers that the complainant, by virtue of the provisions of said deed, owns an absolute fee in the property free from any contingency or remainder. The only proof taken in the case is the deposition of the complainant and attached to it as a part thereof is Exhibit 1, which is a certified copy of the birth certificate of his daughter, the said Mary Elizabeth Teasley.

The complainant at the time the deposition was taken, on June 17, 1956, was about 84 years old. At the time the deed was made by his grandfather, he was about 16 years of age. Complainant is a retired Methodist minister. The deed was executed to him by his paternal grandfather. The defendant, Mary Elizabeth Teasley, is the only living child of complainant who still survives, two other daughters and two sons having died in their infancy.

The Opinion of the Chancellor is contained in his Decree, no separate memoranda having been filed. The pertinent parts of his Decree, after setting out the deed in full with a description of the involved real estate, is as follows:

"1. That it was the intention of the grantor, W. J. Moore, to grant only a life estate to complainant, W. H. Moore.

"2. There is no ambiguity in said deed, but that the intention of the grantor is clear and unmistakable, viz: that the complainant was only granted a life estate in and to the property in question.

"3. That said property on the death of the complainant is to go to the child or children of W. H. Moore, if any child or children be alive at the death of W. H. Moore.

"4. That in the event the complainant, W. H. Moore, dies without children, the land is to revert to W. J. Moore, the grantor, or if W. J. Moore is dead, the property shall go to the estate of W. J. Moore to be divided equally among all his heirs clear

of any encumbrances as to dower and homestead, or otherwise.

"5. That in said deed, the grantor provided: '* * * if he should never marry and if married no issue be born to him then and in that event I want the land herein conveyed at the death of my Grandson the said Willie Harbert Moore, to revert back to me, or if I am dead to my estate to be divided equally among all my heirs clear of any encumbrances as to dower and homestead or otherwise * * *'; and that the words, 'to my estate', mean 'to my heirs'.

"6. That the grantor, W. J. Moore, did not by the deed in question create a fee tail estate which by operation of law would vest the complainant with a fee simple title to the land in question.

"7. That five children have been born to complainant, W. H. Moore, and that four of these children died as infants.

"8. That there is now living one of the children born to the complainant; that said child, Mrs. Mary Elizabeth Moore Teasley is 32 years of age, is married, and resides in Columbus, Georgia; and that there has been born to her marriage two daughters, who are living and who are the grandchildren of W. H. Moore.

"It is, therefore, ordered, adjudged and decreed by the court:

"That the complainant have only a life estate in and to the property herein described, and, after the death of W. H. Moore, said property shall descend

to his child or children, if there be any child or children alive at his death; and that if W. H. Moore die without children alive, then said land shall revert to W. J. Moore, and if he be dead, then to his heirs in fee simple."

From that Decree the complainant appealed and has assigned errors.

It is the contention of the complainant that:

(1) He took a fee simple absolute title to the property by virtue of the granting clause, which he insists is absolutely irreconcilable and in conflict with the subsequent clauses in said deed.

(2) Having been granted an absolute fee by the granting clause, it will not be cut down by subsequent portions of the instrument which are not in themselves clear, unmistakable and certain.

(3) Assuming no irreconcilable conflict exists between the granting and subsequent clauses, when he married and had issue alive, the possible subsequent conditions and requirements necessary to vest him with absolute fee simple title were fulfilled.

(4) If the habendum or subsequent clauses of said deed had been valid in every respect, the instrument creates a fee tail which by operation of law is converted into a fee simple absolute.

In accord with our present statutes and the later decisions of our courts, in construing deeds and wills, it is the law that consideration must be given to the whole instrument in order to ascertain the intention of the grantor or the devisor, and so as to give effect to

their several parts without rejecting any of them, if possible, upon the presumption that the parties intended every part to have effect and that the technical rule of the common law with respect to division of deed into formal parts cannot prevail against the legal intention of the grantor determined from every part.

In the case of Higginson v. Smith, 38 Tenn. App. 223, 272 S. W. (2d) 348, 349, in an opinion by Judge Felts, Presiding Judge of the Middle Section of Tennessee, the granting clause of the deed vested an absolute fee simple title in the grantee by the usual and appropriate words:

> "* * * do transfer and convey unto Dudley Smith and his heirs and assigns"

thereafter describing the real estate. The habendum in that deed recited the fact that the property was to belong to, be owned and held

> "to the said Dudley Smith and wife heirs and assigns forever and we do covenant with the said Smith",

following which was the warranty of seizing, possession and unencumbrance. The deed then provided that the grantor bound himself, his heirs and representatives, to forever warrant and defend the title to said real estate

> "to the said Smiths their heirs and assigns against the lawful claims of all persons whomsoever."

In that opinion, based upon the authorities referred to therein, the following rules are set forth:

"(1) It is the duty of the court to construe the deed, if possible, so as to give effect to its several parts and avoid rejecting any of them, upon the presumption that the parties intended every part of it to have effect.

"(2) The technical rules of the common law as to the division of deeds into formal parts have long since been disregarded in this state, and the rule now is that all parts shall be examined to ascertain the intention. Lockett v. Thomas, 179 Tenn. 240, 243, 165 S. W. (2d) 375; Archer v. Culbertson, 28 Tenn. App. 52, 185 S. W. (2d) 912; McCord v. Ransom, 185 Tenn. 677, 207 S. W. (2d) 581; Hall v. Crocker, 192 Tenn. 506, 241 S. W. (2d) 548.

" ' "According to the trend of modern decisions, the technical rules of the common law as to the division of deeds into formal parts will not prevail as against the *manifest intention of the parties as shown by the whole deed.*" ' (Italics added.) Ballard v. Farley, 143 Tenn. 161, 164, 226 S. W. 544.

"(3) Under this rule, 'the estate conveyed by the granting clause, standing alone, may be enlarged or lessened in the habendum if, considering the instrument as a whole, such appears to have been the intention of the parties.' (Citing numerous cases.) Quarles v. Arthur, 33 Tenn. App. 291, 295, 231 S. W. (2d) 589, 591.

"(4) But if the deed, considered as a whole, shows no such intention, then the common law rule still prevails, that 'if the habendum clause is in conflict with the estate granted in the granting clause, it

must be rejected.' Teague v. Sowder, 121 Tenn. 132, 160, 161, 162, 114 S. W. 484, 491.''

In the case of Griffin v. Griffin, 183 Tenn. 693, 702, 195 S. W. (2d) 5, 9, in construing a will so as to arrive at the proper intention of the testator and which will contained some invalid provisions, Chief Justice Neil, very much against the opinion of the writer of this Opinion at that time, laid down another rule as follows:

"In deciding the question of intention, it is proper to give consideration to words and phrases that may not dispose of anything and others that make a void devise or bequest of property. It has been repeatedly held that intention must be found from the whole will, every part of which must be considered in relation to every other part. Thus in McDonald v. Ledford, 140 Tenn. 471, 475, 205 S. W. 312, 313, it was said, 'The introductory clause of a will, though formal and indispositive in character, is not for that reason to be disregarded in construing the will.' See also Hoggart v. Clopton, 142 Tenn. 184, 192, 217 S. W. 657.''

By reference to this case, we do not mean to say, nor did Chief Justice Neil mean to say, that an invalid clause could be made valid. He simply intended to say that in arriving at the intention of the testator, as shown from other parts of the instrument, consideration should be given to the invalid expressions or parts, if any light could be gleaned therefrom which would help in arriving at the true intention of the grantor or devisor.

In the brief of defendant he seems to rely wholly upon the case of Butler v. Parker, 1946, 200 Tenn. 603, 293 S.

W. (2d) 174, 177, by Judge Burnett. In that case the applicable parts of the opinion with respect to the instant case, deal only with "estate tail" and "the rule in the Shelley's case". We will avert to this case in some following section of this opinion.

Perhaps we can visualize the intention of the grantor better if we transpose certain sections of the deed so as to bring them together, with respect to the contingencies and limitations which complainant contends are ambiguous and so unclear and indefinite that they cannot cut down the title given in the granting clause.

If we arrive at the intention of the devisor only from the granting clause and the habendum of the deed, giving no consideration to the habendum only or that part of the deed following the habendum or covenanting section, we are compelled to hold that the defendant took a fee simple title. However, when we bring the several parts of this deed together, which deal with the contingencies of the children of the grantee, we think it sheds some light on the intention of the grantor, as expressed in the habendum. Let us see what we would have by bringing these several parts together in the instant case:

"To have and to hold the same to the said Willie Harbert Moore his heirs and assigns forever, subject to certain conditions and contingencies to be hereinafter set out in this deed * * *. But this deed is made subject to the following conditions and contingencies, that is to say, it is my intention and desire that in the event my said Grandson shall marry and issue shall be born unto him, I want him to have the land herein conveyed absolutely and in fee simple, the same to go to his heirs at his death. * * * I do not by

this deed convey to his widow, if he should leave one without issue as aforesaid, any rights of dower or homestead or otherwise in said land. * * * The issue contemplated in this deed in order to give the said Willie Harbert Moore an absolute fee simple title to the land herein conveyed, must be issue alive at the time of his death."

Let us bring together the contingencies with respect to a reversion of the remainder to the heirs of the grantor:

"To have and to hold the same to the said Willie Harbert Moore his heirs and assigns forever, subject to certain conditions and contingencies to be herein-after set out in this deed * * * But this deed is made subject to the following conditions and contingencies, that is to say * * * But if he should never marry, and if married no issue is born to him * * * I do not by this deed convey to his widow, if he should leave one without issue as aforesaid, any rights of dower or homestead or otherwise in said land, but the same is hereby specially reserved and the land herein conveyed is to descend to my heirs as directed in this deed of conveyance * * * But if he should never marry, and if married no issue is born to him, then and in that event I want the land herein conveyed at the death of my Grandson, the said Willie Harbert Moore to revert back to me, or if I am dead to my estate to be divided equally among all my heirs clear of any encumbrances as to dower and homestead or otherwise, that is to say, I want my heirs and representatives to have the land at his death in the event he should die without issue alive."

It is insistence of the defendants that from an examination of the entire deed and all of its parts, it was clearly the intention of the grantor that his grandson took a life estate only and that the remainder in fee would vest in the heirs of the grantor contingent upon a lawful child or children being born to complainant and survive him, and in such event such child or children would take the remainder in fee absolute.

In Vaughn v. Cator, 85 Tenn. 302, 2 S. W. 262; Meacham v. Graham, 98 Tenn. 190, 39 S. W. 12; Katzenberger v. Weaver, 110 Tenn. 620, 75 S. W. 937; Frank v. Frank, 120 Tenn. 569, 111 S. W. 1119; Scruggs v. Mayberry, 135 Tenn. 586, 188 S. W. 207; Eckhardt v. Phillips, 176 Tenn. 34, 43, 137 S. W. (2d) 301, 304; Teague v. Sowder, 121 Tenn. 132, 114 S. W. 484; Ballard v. Farley, 143 Tenn. 161, 226 S. W. 544; Hicks v. Sprankle, 149 Tenn. 310, 257 S. W. 1044; Phoenix Mutual Life Ins. Co. v. Kingston Bank & Trust Co., 172 Tenn. 335, 112 S. W. (2d) 381, 383; and Higginson v. Smith, supra, it is held in all of them that [38 Tenn. App. 223, 272 S. W. (2d) 349]:

"It is well settled by our cases that where an irreconcilable conflict exists between the granting clause of a deed and subsequent clauses thereof, the granting clause will prevail."

But in Scruggs v. Mayberry, supra, and in Griffin v. Griffin, supra, it is expressly held that this rule does not operate unflinchingly and is not a rule of property to the extent of other rules of property, such as the rule against perpetuities, but is a rule of construction that will yield to the intention of the devisor (in the instant case the grantor) as expressed in the whole instrument.

And in the same cases it was determined that the rule, where a provision in a will is so worded that, standing alone, it would pass to the devisee an absolute estate and is followed by another provision directing that such estate shall pass to some other person upon the death of the first-named devisee without issue or children, then that such death must be held to mean a death of the first-named devisee in the lifetime of the testator, *"unless the contrary intention—death after the death of the testator—clearly and unmistakably appear[s] from the will,"* (in this case the deed), for it is clear now that the same rules of construction to arrive at intention apply with equal effect to both wills and deeds (grantee and testator) alike [183 Tenn. 693, 195 S. W. (2d) 8].

In Lockett v. Thomas, supra, it was said [179 Tenn. 240, 165 S. W. (2d) 376]:

"Giving effect to Code, sec. 7597, this court has held that in determining what estates the grantor intended to convey, the deed as a whole is to be considered and the intention of the grantor gathered by giving all the words used their appropriate meaning. Nashville, etc. R. v. Bell, 162 Tenn. 661, 39 S. W. (2d) 1026."

Citing as authority, Fogarty v. Stack, 86 Tenn. 610, 8 S. W. 846, where the question of construction of a deed to determine whether a fee absolute was given or a life estate.

The granting clause in Lockett v. Thomas, supra, stated:

"do hereby grant and convey unto the party of the second part that certain tract", etc.

and the description of the land followed. The habendum clause defines the estate granted as "in fee simple" with the immediate qualification:

"provided, however, should the said Robert T. Smith not dispose of said property during his life time and die seized and possessed thereof, then the fee simple title shall pass and vest in Flora Smith Lockett, the daughter of said Robert T. Smith, if living * * *".

Flora Smith Lockett did survive, and the Court said:

"Therefore, under the plain language of the deed, took title to the lot in fee simple."

In Fogarty v. Stack, supra, the deed in question is as follows:

" 'Hath given, granted, bargained, sold, and conveyed, and by these presents doth give, bargain, grant, sell, and convey unto the party of the second part and her heirs, in fee-simple forever, a certain lot,' etc., (describing it); 'To have and to hold said lot of land for the sole and separate use and benefit of the said second party, free from the debts, liabilities, and control of her present or any future husband, with power to sell, and, by deed made and executed jointly with her husband, convey the said lot of land, and vest the proceeds in other property, to be held for the same sole and separate use as the property herein conveyed. Should said second party die in the life-time of said first party, then said lot of land is to revert to him in fee-simple;' 'To have and to hold the above-described land and premises, together with all and singular the rights and privileges, buildings, improvements, and appurtenances,

of, in, or to the same belonging, or in anywise appertaining, unto the party of the second part, and her heirs, forever."

The wife died without issue and had not disposed of the property. Her husband survived. Nieces and nephews of the wife, as her heirs at law, filed a bill to recover the property from the husband, insisting that the language,

"her heirs, in fee-simple forever"

could not be controlled by the reservation and provisions for the reversion of the property to the grantor as was decided in the first habendum (there being as shown in the foregoing quotation two habendums) a provision in the habendum repugnant to the estate granted by the granting clause being void. The Court said:

"We may concede all that is contended for as to this rule of construction at common law, and it is sufficient answer thereto to say that the rules of the common law, which looked at the granting clause, and the habendum and tenendum as separate and independent portions of the deed, each with its particular function and office, have long since become obsolete in this country, and certainly in this state.

"The true rule is to look at the whole instrument, without reference to formal divisions, in order to ascertain the intention of the parties, and not to permit antique technicalities to override such intention."

We concede that the language in the granting clause of the deed before us, if contradicted by unintelligible

and ambiguous provisions and limitations in the following parts of the deed, or by limitations which could not be reconciled with the provisions of the granting clause, and nothing else appeared, the complainant would take an absolute title. We further concede that if from the entire deed it could be determined that it was the intention of the grantor that the grantee take an absolute fee simple title to said property in the event of his marriage and the birth of a child to him and his wife, then at such birth of a living child he would take a fee simple absolute title. If we are not permitted to give consideration to the last sentence in the deed, which to all intents and purposes, as literally expressed, is void, we might say the absolute fee simple title vested in the grantee when a lawful child was born alive.

Under Griffin v. Griffin, supra, we are not only allowed to give consideration to the void part of the deed, but we are required to do so in arriving at the intention of the grantor.

It is also insisted that another proper construction of the deed in question would be that in order to give the absolute fee simple title to the grantee, one child of his would have to be born during the lifetime of the grantor and if we could determine that this was the intention of the grantor, absolute title would vest, on such occurrence, in the grantee. We cannot reach this contention because there is an expression in this deed which provides:

"to revert back to me, or if I am dead to my estate to be divided equally among all my heirs clear of any encumbrances as to dower and homestead or otherwise, that is to say I want my heirs and representa-

tives to have the land at his death in the event he should die without issue alive * * *. The issue contemplated in this deed in order to give the said Willie Harbert Moore an absolute fee simple title to the land herein conveyed, *must* be issue alive at the time of his death.''

With these expressions in the deed, certainly it was his intention that there be a reverter to him at the time of the death of the grantee with no child surviving, and if he, the grantor, was dead, a reverter to his heirs who would take his estate.

In this connection it might be said there is nothing in the record to show whether he ever had any child born to him while the grantor was living. The date of the birth of the only one of his five children shown by the record is that of the surviving daughter, by her birth certificate (R. 45), which was January 8, 1924. The grantor died in 1904 (R. 37). True this surviving daughter is a child of the grantee's second marriage and her birth is shown to have occurred 20 years after the grantor died. We have no way to assume that any of the other four children who died in infancy were born while the grantor lived. Since there is no showing that a child was born prior to the death of the grantor, the argument by complainant that it was the intention that grantee take fee simple absolute title if a child was born to him before the grantor died, is utterly inapplicable with the proof in the condition in which we find it.

Without quoting further from the cases and with the full knowledge by the Bar everywhere that the word ''heirs'' is sometimes used as a word of purchase and sometimes as a word of limitation, and that generally

the word "assigns" is used as a word authorizing a grantee to dispose of the property granted, and notwithstanding the law with respect to estates tail, the law in Shelley's case and the rules of construction by which we are governed, giving proper application to every principle involved, it seems to us that the deed as a whole has been properly construed by the Chancellor and his Decree is affirmed.

Decree will be entered in this Court in accord with this opinion and the complainant below, appellant in this court, and his sureties on his cost bond will be taxed with the costs of this appeal.

Carney and Bejach, JJ., concur.